UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CIV-81142-CANNON/REINHART

LINDSAY GRIMM,

                Plaintiff,

v.

IMAGINE NATION COMPANY, INC., et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 19)

This lawsuit stems from injuries Plaintiff sustained while working at Defendants' resort in the Bahamas. The Honorable Aileen M. Cannon dismissed the initial Complaint for lack of personal jurisdiction under Rule 12(b)(2) and gave Plaintiff "one final opportunity to replead her Complaint" (ECF No. 17), which Plaintiff has done with her Amended Complaint (ECF No. 18). With the instant motion, Defendants again seek to dismiss Plaintiff's pleading for lack of personal jurisdiction. ECF No. 19. I have reviewed the Amended Complaint, the motion, Plaintiff's response (ECF No. 20), and Defendants' reply (ECF No. 21). For the reasons set forth below, I RECOMMEND that Defendants' motion be GRANTED IN PART AND DENIED IN PART.

## **LEGAL STANDARDS**

Personal Jurisdiction under Rule 12(b)(2)

Faced with a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A prima facie case is established if the plaintiff presents enough evidence to defeat a motion for a directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* The Court also may consider evidence outside the four corners of the complaint. *See Klayman v. Deluca*, No. 15-CV-80310-KAM, 2016 WL 1045851, at *2 (S.D. Fla. Mar. 16, 2016), *aff'd,* 712 F. App'x 930 (11th Cir. 2017). Where the supplemental evidence presented by the parties conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*

Personal jurisdiction may be exercised over a non-resident defendant if: (1) a basis of jurisdiction is provided under the forum state's long arm statute; and (2) the exercise of jurisdiction under state law comports with the Due Process Clause of the Fourteenth Amendment. *E. Okeechobee Palms, LLC v. Kellam*, No. 9:14-CV-80866, 2015 WL 12977392, at *2 (S.D. Fla. Feb. 23, 2015) (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

Florida's long-arm statute, Section 48.193, provides two ways that a defendant may be subject to the jurisdiction of Florida courts. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). The first is specific personal jurisdiction, when

the claims in the lawsuit arise out of or relate to a defendant's contacts with Florida. *Id.* The statute enumerates certain conduct that gives rise to specific personal jurisdiction over a non-resident defendant, such as committing a tortious act within Florida (§48.193(1)(a)(2)) or breaching a contract required to be performed in Florida (§48.193(1)(a)(7)). "Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit." *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (citing *Cronin v. Washington Nat. Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) (observing that Florida's long-arm statute gave the court personal jurisdiction over the defendants as to the contract claim "but arguably not the negligence claims").

The second way is to assert general personal jurisdiction over a non-resident defendant. This extends a court's jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida, as long as the defendant engages in "substantial and not isolated activity" in Florida. *See* §48.193(2). "Florida courts have interpreted 'substantial and not isolated activity' to mean 'continuous and systematic general business contact.'" *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1341 (11th Cir. 2015)) (citation omitted)). "This is a much higher threshold for a plaintiff than is necessary to support specific personal jurisdiction." *Giuliani v. NCL (Bahamas) Ltd.*, 558 F. Supp. 3d 1230, 1242 (S.D. Fla. 2021) (citing *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386 (S.D. Fla. 2014) ("[B]ecause general personal jurisdiction is based on contacts unrelated to the

3

cause of action being litigated, the due process requirements for general jurisdiction must be assessed under a stricter standard than those for specific jurisdiction.") (citation omitted)).

Once the plaintiff has demonstrated that the defendant has met at least one of the jurisdictional criteria of Florida's long-arm statute, the court must then determine whether the non-resident defendant possesses sufficient minimum contacts with the state to satisfy the Due Process Clause of the Fourteenth Amendment. *E. Okeechobee Palms, LLC v. Kellam*, 2015 WL 12977392, at *2. To comport with the due process requirement, courts in the Eleventh Circuit apply a three-prong test "which examines (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposely availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's law; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)); *see generally Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 141 S. Ct. 1017 (2021) (discussing "relate to" requirement). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a 'compelling case' that the exercise of jurisdiction would violate the [third prong]." *Id.*

4

For the first prong, the inquiry focuses on "the direct causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1356-57 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)). In conducting the "purposeful availment" analysis under the second prong, courts apply the traditional minimum contacts test, which assesses the nonresident defendant's contacts with the forum state and asks "whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposely availed himself of the privileges of doing business with the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1356-57. For the third prong of the due process test, courts consider: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Id.* at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008)).

## FACTS ALLEGED IN THE AMENDED COMPLAINT

Plaintiff Lindsay Grimm is a resident of Palm Beach County, Florida. ¶1.[1] Defendant Imagine Nation Company, Inc. ("Imagine Nation") is a foreign corporation that employed Ms. Grimm. ¶2. Imagine Nation operates a luxury resort in the Bahamas, called Musha Cay/Islands of Copperfield Bay. ¶¶11, 14. Defendant David

---

[1] Unless otherwise noted, paragraph citations ("¶") are to the numbered paragraphs of the Amended Complaint, ECF No. 18.

5

Seth Kotkin, a/k/a David Copperfield resides in Nevada and is the principal and owner of Imagine Nation. ¶¶4, 5, 40; ECF No. 19 at 2.

Imagine Nation regularly uses Florida as a stopping point for guests, staff, and goods traveling to the Bahamian resort. ¶11. Specifically, Imagine Nation uses an airport hangar in Fort Lauderdale ("the Facility") as a mailing and delivery address for goods it transports on a private plane to the resort; Imagine Nation has vendors deliver goods to the Facility rather than having them shipped to the Bahamas or acquiring them in the Bahamas. ¶¶12, 27, 29, 31. The Facility has signs designating it as "Copperfield Bay." ¶¶13, 18, 30. Imagine Nation shares the Facility with another Copperfield-controlled entity, Imagine Air Leasing, which leases the hangar and owns the airplane used to transport people and goods to the Bahamian resort. ¶15. Mr. Copperfield also uses the Facility as a mailing address and to store personal items. ¶20.

Ms. Grimm began working full-time for Defendants in May of 2019 as a buyer. ¶22. Her work was performed primarily in Boca Raton and Fort Lauderdale, Florida, with some travel to the Bahamian resort. ¶¶22, 33. Plaintiff's job description included "keep[ing] the hangar clean and organized," "pick[ing] up items form [*sic*] the mailbox" (located in Florida), "airport pick-ups for owner, manager, and owner's guests when traveling to and from the island and between airports (and sometimes hotels)." ¶¶12, 26. Ms. Grimm's job also included full use of the company van in Florida. ¶¶17, 24. Ms. Grimm attended work meetings at the residence of her supervisor, Cathy Daly, in Palm Beach County. ¶¶26, 28. When Ms. Grimm traveled

6

to the Bahamas, she was there at Imagine Nation's direction and under its control; Imagine Nation transported her to the island and provided housing while she was there.  ¶44.

On July 6, 2019, Ms. Grimm was on a dock at the Bahamian resort, having been directed by Imagine Nation to assist guests arriving on a power boat owned by Imagine Nation and Mr. Copperfield.  ¶¶38, 40.  The water was turbulent, and before the boat was secured to the dock, the guests were aggressively attempting to exit the boat. ¶38.  Ms. Grimm was on the dock and attempted to keep the guests on the boat for safety, and as she did, a large wave moved the boat toward the dock piling, crushing her left arm between the dock piling and the boat.  ¶39.

Ms. Grimm requested that Defendants provide medical care for her injuries, but Defendants did not contact the available on-call doctor.  ¶79.  Ms. Grimm's supervisor, Cathy Daly, insisted that she had merely dislocated her wrist, to lull Ms. Grimm into giving up her request for immediate care.  ¶81.  Defendants assured Ms. Grimm that she would be "taken care of," and Mr. Copperfield "personally agreed to 'take care' of Plaintiff's medical care arising from her injury," but Defendants insisted that she wait until the next day for treatment at a medical facility.  ¶¶71, 80, 82, 84.  Mr. Copperfield asked Ms. Grimm to wait and go to the facility of his choice in Florida.  ¶87.  The next day, Mr. Copperfield authorized the use of his plane to transport Ms. Grimm to Florida for medical care; he selected Florida rather than local treatment.  ¶84.  Ms. Grimm was flown from the island and taken to a hospital in Palm Beach County, which was not in Plaintiff's insurance network or nearest the airport hangar

in Fort Lauderdale, but Mr. Copperfield's promise to pay induced Plaintiff to go along with the selected medical facility for treatment. ¶¶85, 87.

During treatment of her injury in Palm Beach County, Ms. Grimm discovered that she had a substantial injury that required surgery and post-surgical treatment. ¶86. Ms. Grimm incurred substantial expenses for necessary care in Florida, at a facility to which Defendants directed her. ¶¶87, 88, 89. Defendants' obligation was to make payment to those facilities and/or providers in Florida, but rather than "take care of [Ms. Grimm]" in the Bahamas, or pay for treatment in Florida as promised, Defendants sent Ms. Grimm to Florida for treatment and left her responsible for the expenses. ¶¶71, 87, 88, 89. Ms. Grimm states that "[Mr.] Copperfield did make some payments . . . but he discontinued doing so even though treatment for the injury was continuing." *See* Plaintiff's Declaration (ECF No. 20-1) at ¶38.

The Amended Complaint alleges four causes of action. Count I is a claim for negligence, alleging that Defendants employed a boat captain who was not qualified to operate the vessel in a reasonably safe manner and that Defendants failed to provide safe working conditions in the Bahamas. ¶¶60-63.[2] Counts II and III allege breach of contract against Mr. Copperfield and Imagine Nation, respectively, for failing to abide by their promises to pay for Plaintiff's medical expenses in Florida. ¶¶82, 85, 89, 100, 102, 103, 105, 106. Count IV alleges another breach of contract

---

[2] The Amended Complaint does not specify which Defendant(s) are liable for the negligence alleged in Count I. Both Defendants are referenced in Count I, although most of the negligent acts described are attributed to Imagine Nation; Mr. Copperfield is only identified as the owner of the boat and Imagine Nation's principal. ¶60.

claim against Imagine Nation. According to Ms. Grimm, it was customary for Imagine Nation to return the personal property employees kept at the resort when their employment ended, but her property was not returned to her. ¶¶112-114.

In addition to the foregoing facts, Ms. Grimm contends that Defendants have other connections to Florida including: Imagine Nation recruited her in Florida (¶¶43, 51) and operates a website that directs general inquiries about the Bahamian resort to a Florida phone number, which is answered by a Florida employee (¶¶8, 13, 32), and Defendants are attempting to sell the boat that injured Ms. Grimm via a broker in Fort Lauderdale, Florida. ¶42.[3]

## DISCUSSION

*General Jurisdiction*

The Amended Complaint does not allege general jurisdiction over the Defendants. Absent exceptional circumstances, the due process clause allows a court to exercise general jurisdiction over a corporation only in its place of incorporation and principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 & n.19 (2014). The Amended Complaint makes only a fleeting reference to general jurisdiction. For purposes of the Florida long-arm statute, it alleges that "Defendant

---

[3] Ms. Grimm also contends that Defendants deposited her salary into a U.S. bank account that she maintained in Florida (¶¶25, 53; *see also* Plaintiff's Decl. at ¶¶6-7). Imagine Nation's account manager counters that Ms. Grimm's compensation was "paid via wire transfer to her account at a bank that was located in Columbus, Ohio, based on the ABA routing number provided." *See* Declaration of Jamie Palmieri (ECF No. 19-1) at ¶5. To the extent it is relevant, I view this fact in the light most favorable to Plaintiff and deem it to be a direct contact with Florida. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

9

Imagine Nation 'is engaged in substantial and not isolated activity in this state,' [because] Defendant Imagine Nation regularly uses Florida as a stopping point for guests, staff, and goods traveling to the Bahamas island resort . . . rather than having them travel direct to the Bahamas." ¶11. This claim is otherwise undeveloped. The Amended Complaint does not allege that Imagine Nation is incorporated in Florida or has its principal place of business here. For these reasons, and for the reasons stated in Judge Cannon's prior order (ECF No. 17 at 5-9), I find that the allegations in the Amended Complaint do not satisfy Plaintiff's burden to show that this Court can exercise general personal jurisdiction over Defendants.

*Specific Jurisdiction*

<u>Count I – Negligence</u>

Under Fla. Stat. §48.193(1)(a)(2), Florida courts are authorized to assert specific jurisdiction over a non-resident defendant who commits a tortious act within the state. Count I of the Amended Complaint alleges that Defendants were negligent in employing an unqualified boat captain who failed to operate the boat in a reasonably safe manner and in failing to ensure safe working conditions in the Bahamas. ¶¶61-63. Ms. Grimm claims that these tortious acts resulted in her arm being crushed on Defendants' boat dock in the Bahamas.

As Judge Cannon explained in her prior decision, neither the tortious acts alleged by Plaintiff in Count I, nor the resulting injury, occurred in Florida. ECF No. 17 at 11. The Amended Complaint does not allege any new facts that would change

this analysis. Accordingly, there is no long-arm statutory basis for this Court to exercise personal jurisdiction over the Defendants for Count I.

<u>Counts II and III – Breach of Contract for Failure to Pay Medical Expenses</u>

Another way to satisfy specific personal jurisdiction under Florida's long-arm statute is to allege a cause of action that arises from the defendant "breaching a contract . . . by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. §48.193(1)(a)(7)). For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Vega*, 564 F.3d at 1272 (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Here, the Amended Complaint alleges that both Defendants assured Ms. Grimm that her medical expenses would be "taken care of," but Defendants insisted that she wait until the next day for treatment at a Florida medical facility of their choosing. ¶¶71, 80-82, 84, 85, 87, 88, 100-106. The Amended Complaint adequately alleges the existence of a contract in that Defendants offered to pay Ms. Grimm's medical expenses at a Florida facility of their choosing, in exchange for her agreement to forego immediate care in the Bahamas or at a facility that was within her insurance

11

network. The Amended Complaint also alleges that as a result of Defendants' failure to fulfill their promise to pay her medical expenses, Ms. Grimm suffered damages.

Defendants appear to acknowledge that an oral contract is adequately pled, but they contend that "to the extent there was any agreement to reimburse Plaintiff for her medical expenses . . . there still remains no allegations that either Defendant promised to do any act inside the State of Florida." ECF No. 19 at 5-6. Notably, Defendants' argument inserts a fact not alleged in the Amended Complaint – that Defendants would *reimburse* Ms. Grimm for her medical care. But, the Amended Complaint specifies that Mr. Copperfield "orally offered to pay for Plaintiff's treatment in Florida" and that his "obligation was to make payment to those facilities and/or providers in Florida." ¶89. Thus, viewing the facts in the light most favorable to Plaintiff, the Amended Complaint plainly alleges contractual performance required to be made in Florida. *See Arbitrage Int'l Mktg., Inc. v. DeMaria*, No. 10-80399-CIV, 2010 WL 3941805, at *3 (S.D. Fla. Oct. 6, 2010) (defendant's alleged failure to pay a Florida corporation satisfied breach of contract under Florida's long-arm statute) (citing *Swisher Int'l, Inc. v. ISA Chicago Wholesale, Inc.*, No. 08–1179, 2009 WL 1405177, at *5 (M.D. Fla. May 19, 2009) (court had personal jurisdiction over defendant who allegedly "breach[ed] a contract in Florida by failing to pay, an act required to be performed in Florida.").

Even if the Amended Complaint alleged that Defendants had agreed to reimburse Ms. Grimm for her medical expenses, I find that this still would have required performance in Florida given that Ms. Grimm is a Florida resident and,

12

construing the facts in the light most favorable to her, the reimbursement would have been made into a bank account that she maintained in Florida. *See Pulte Cap. Partners, LLC v. Lush*, No. 23-CV-81282, 2024 WL 245230, at *1 (S.D. Fla. Jan. 23, 2024) (where complaint alleged a failure to return money owed in Florida, court found "failure to pay money due in Florida is sufficient to satisfy [section 48.193(1)(a)(7) of the Florida long-arm statute]").

In addition to satisfying Florida's long-arm statute, I find that Plaintiff has also established that the Defendants possess sufficient minimum contacts with Florida to satisfy the first two prongs of the due process inquiry. When reviewing a contractual relationship for minimum contacts, "[t]he focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1293 (S.D. Fla. 2021) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) (emphasis in original).

Here, Plaintiff's breach of contract claim for failure to pay arises directly out of Defendants' contacts with Florida — they sent Ms. Grimm to Florida for medical treatment. I further find that Defendants have "purposely availed" themselves of the privilege of conducting business activities within Florida. These findings are based on Defendants' decisions to employ staff in Florida, to send Plaintiff to a specific facility in Florida for medical treatment, and to promise to pay for that treatment in Florida. In making these decisions, Defendants deliberately engaged in significant

13

activities that created an ongoing obligation with a Florida resident. *See Est. of Caviness v. Atlas Air, Inc.*, No. 1:22-CV-23519-KMM, 2023 WL 6802950, at *5 (S.D. Fla. Sept. 20, 2023) (court had specific personal jurisdiction over defendant who "purposefully availed itself of the privileges of doing business with Florida by employing staff in Florida and by implementing [ ] policies that governed its Florida-based employees.").

Moreover, Defendants' partial payment of Ms. Grimm's Florida medical bills establishes that this Court's exercise of personal jurisdiction over them in Florida comports with "traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (quoting *Burger King Corp*, 471 U.S. at 474–75). Having made the decision to send Ms. Grimm to Florida for medical treatments and having partially paid her medical expenses there, Defendants cannot be surprised to be haled into court in Florida. As to the third prong, Defendants have not made a "compelling case" that the exercise of jurisdiction by this Court would not comport with traditional notions of fair play and substantial justice. *Id.* Accordingly, I find that this Court has the authority to assert personal jurisdiction over the Defendants as to Counts II and III.[4]

---

[4] Although I find that the Court has personal jurisdiction over these breach of contract claims, this finding does not automatically extend to Counts I and IV. As explained by the Eleventh Circuit in *Cronin*, where the defendant made a phone call into Florida allegedly promising to procure insurance for a person in a Florida hospital, the trial court had personal jurisdiction over the entire case because all of the claims "arose from th[is] same jurisdiction generating event." *Id.,* 980 F.2d at 670-71. Here, the "jurisdiction generating event" was Defendants' decision to

Count IV – Breach of Contract for Failure to Return Personal Property

Count IV of the Amended Complaint alleges that Imagine Nation "would ship items from the Copperfield Bay hangar [ ] round-trip for employees [and] when their employment ended, their items were provided to them at the Florida facility to take home." ¶47. "Upon completion of her employment, [Plaintiff] expected that Imagine [Nation] would honor its commitment to return her personal property to Florida. Only one such item was returned; the rest was not." ¶48.

These facts as alleged in the Amended Complaint do not establish the existence of a contract. Likewise, Ms. Grimm's declaration does not reference any contract or agreement that she had with Imagine Nation for the return of her personal property. Instead, Ms. Grimm refers to a "policy" whereby Imagine Nation would transport employees' personal property from the resort back to Florida at the end of their employment. *See* Plaintiff's Decl. at ¶20.

Plaintiff's expectation that Imagine Nation would honor an alleged policy is insufficient to sustain a breach of contract claim for purposes of establishing personal jurisdiction under Florida's long-arm statute. Plaintiff has not alleged the existence of any contract or pled any facts showing that there was an (1) offer; (2) acceptance;

---

transport Ms. Grimm to a Florida medical facility and then fail to pay her expenses there, as promised. These events occurred after the alleged tortious conduct that caused Ms. Grimm's injury in the Bahamas. Thus, the negligence alleged in the Amended Complaint did not arise from the jurisdiction generating event. *See e.g., RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 788 (11th Cir. 2014) (the jurisdiction generating event was the transmittal of confidential information in Florida, but it "did not give rise" to other causes of action which centered on events occurring almost entirely in Asia, so the court lacked personal jurisdiction to adjudicate those claims).

15

(3) consideration; or (4) sufficient specification of the essential terms of this alleged agreement.  *See Vega*, 564 F.3d at 1272 (citing *St. Joe Corp.*, 875 So. 2d at 381).  For these reasons, I find that Plaintiff has not established that this Court has personal jurisdiction over Imagine Nation for Count IV.  *See Bystrowski v. Perry*, No. 91-1406-CIV-T-17, 1992 WL 161047, at *4 (M.D. Fla. June 29, 1992) (where complaint contained "no specific allegations that Plaintiff entered into any contract with Defendant," court found no personal jurisdiction under long-arm statute because "[o]n the face of the complaint it is clear that no contract is [ ] alleged").

## RECOMMENDATION

Based on the foregoing, I RECOMMEND that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART.**  ECF No. 19.  Counts I and IV should be dismissed for lack of personal jurisdiction over the Defendants.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 16th day of May, 2024, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE